Chief Justice Robertson
delivered the Opinion of the Court.
The appellee (George W. Morton) having obtained a judgment for damages against the appellants, for an alleged tortious conversion of certain slaves, which he had previously bought under a fieri facias against the appellant, Gabriel I. Morton, who had been in the peaceable and uninterrupted possession of them for more than five years next preceding the sheriff’s sale — this appeal from that judgment presents one question only; and *366 that is, whether the Circuit Judge erred in instructing the jury, that a writing, without seal, purporting to be a memorial of a loan of the slaves from the appellant Taylor, to his- co-appellant G. I. Morton, and recorded in the proper county in legal time, was, for want of a seal, void as to the judgment creditors of the said Morton, after he had thus remained more than five years in the possession of the slaves, succeeding the date of the writing.
The legal answer to this question depends on arbitrary law, and will be given by a judicial interpretation of so much of the statute of frauds, enacted in 1796, (1 Stat. Law, 734,) as applies to loans of chattels.
After prescribing the manner in which conveyances of land and of chattels shall be recorded, so as to be effectual against creditors and others, the act declares that, “ in like manner, where any loan of goods and “ chattels shall be pretended to have been made to any “ person with whom, or those claiming under him, pos- “ session shall have remained by the space of five years, “ without demand made and pursued by due process at “ law on the part of the pretended lender, ****** “ the same, shall be taken, as to the creditors and pur- “ chasers of the persons aforesaid, so remaining in pos- “ session, to be fraudulent within this act, and that the “ absolute property is with the possession, unless such “ loan * * * * were declared by will or deed in writing, “ proved and recorded as aforesaid.”
Had the phraseology been,“will or deed” without the adjunct “in writing,” there could have been no ground for diversity of judicial opinion, as to the legal import and effect of the foregoing statutory provision; for a deed necessarily being, in judgment of law, a sealed writing, there would have been no pretext for ascribing to that term, as thus used in the statute, any other character than that of its only legal definition — a sealed writing. And, in such case, it would not be allowable to speculate on the policy of requiring such a writing in support of a loan of a chattel, when no seal is required in attestation of a sale of the same kind of property; for all law, common or statutory, which requires a seal, is now per *367 fectly arbitrary: nevertheless, it is law, and cannot be repealed or modified by judicial discretion, or judicial legislation. And if, in the special enactment we are now considering, the Legislature has prescribed a seal as indispensable, this Court has no authority to dispense with it, even though such a form may now be deemed unnecessary for effectuating the substantial ends of the statute, or although we may not be able to perceive any adequate motive for requiring it, or should even think that justice and sound policy might be more certainly promoted without it.
And therefore, had the act required only a will or deed, or (in order to exclude nuncupative wills) had required only a “will in writing or a deed,” the legal effect of the enactment would have been not only clear, but indisputable.
But, upon the actual phraseology of the statute, the enquiring mind may ask, if “deed” was intended to import — as it alone technically does — a sealed writing, why, instead of deed by itself, did the Legislature prescribe “deed in writing” — the words ‘‘in writing” being, in that view, altogether tautological and somewhat perplexing, so far as any other alienation than that by will might be concerned? And this enquiry might lead to the hypothesis, that the Legislature, contemplating the only two comprehensive or generic modes of alienation— by will or by some other act — used deed synonimously with act, meaning thereby, every other mode of loaning than that by will; and that, therefore, the statute should be understood to mean, that the loan should be evidenced, either by “will (in writing) or by some other act (that is, “deed,”) in writing or, in other words, that, whether the loan should be by will or otherwise, the act or fact of lending, should be evidenced by writing, recorded within the prescribed time.
But this is hypothesis only, or vague conjecture. It is not consistent with either the legal, grammatical, or popular meaning of the language of the statute; and if it be in any degree plausible, every consideration which could favor it, is repelled by the simple fact that, if the Legislature had intended what this hypothesis as *368 sumes, the much more appropriate and obvious phraseology for expressing that intention would have been “ will or instrument in writing,” and which has been used in some other statutes, in which the object was — as hypothetically assumed against the letter in this case — to prescribe any writing as legal and sufficient evidence of right. “ Will or deed, in writing,” is, according to both the grammatical and popular import of the words, in that collocation, “ will in writing, or deed in writing;” and “ deed in writing” cannot, according to any allowable test, or admitted usage, be understood to be a writing without seal; for if it could be, “ deed” would be, not only superfluous, but delusive. “ Deed in writing” is, in fact, but a common mode of expressing, fully .and explicitly, to the popular understanding, the technical idea legally implied by the single word deed; that is, a writing sealed; which the common mind might not understand as being intended or signified by “deed,” without explanation or circumlocution.
And there can, we think, be no doubt that the only legal signification of “deed in writing,” is that of a “deed” in technical law, or a sealed writing.
The conclusion to which we are thus impelled, by the legal, grammatical, and popular import and effect of the words "will or deed in writing,” cannot be affected by the concession, that it reflects upon the legislative style, the verbal criticism, or rather hypercriticism, of unnecessary pleonasm, or copiousness of phraseology. But very few legislative acts are exempt from the like charge of imperfection, when subjected to the touchstone of a fastidious or even classic taste. It is sufficient for all practical and useful ends, that the legislative intention may be clearly inferred from the legislative language, when tested by the established canons of legal interpretation. And that intention—which alone is law—should not, when thus ascertainable, be perverted by abstract speculation as to a presumed object inconsistent with the plain and accustomed meaning of the words used; and especially, where, as in this case, if that meaning be repudiated, there will be no other as consistent, or which any established process of legal construction will *369 allow, without obliterating some of the words—as deed, and substituting others—as instrument, and when too, there is nothing in the context that will justify such perilous and presumptuous amendment.
Wherefore, as, in our opinion, the statute peremptorily requires a deed or sealed writing, and as, also, the document of loan in this case, is neither sealed, nor executory in its character, so as to have, in any sense or for any purpose, the legal effect of a deed, the necessary conclusion is, that, under the statute, it was constructively fraudulent and void, so far as the creditors of G. I. Morton were concerned, and that, therefore, there is no error in the judgment; which must, consequently, be affirmed. '